## CHURCH v. CHURCH and others.

ONE purchasing the shares of some of the tenants in common of land, pending a suit in equity for its partition, becomes seised of such shares; and if he die, and the decree in the suit direct the land to be sold, his widow will be entitled to her dower in the proceeds arising from his shares.

On such a purchase, and a subsequent sale under the decree in the suit, the inchoate right of dower of the purchaser's wife, and all liens affecting his share, become impressed upon the proceeds of the sale.

A purchaser under a decree of the court, whose purchase has been confirmed, and who has paid a part of the price, becomes equitably seised *pro tanto,* and his wife acquires in equity, an inchoate right of dower in the land, subject to the payment of the residue of the purchase money.

As between the widow and creditors of the decedent, she is not subjected to any portion of the costs of administering a fund in which she has a dower right.

Albany, January 14; March 17, 1846.

THIS case came before the court upon exceptions taken by the creditors of Henry C. Barnes, to the report of the Vice-Chancellor of the third circuit, acting as a master, made under an order of reference upon the petition of Huldah D. Barnes, the widow of Henry. The material facts may be thus stated.

The suit was originally for the partition of a farm in Canaan, in the county of Columbia, of which Ebenezer Church died seised in 1835. He left a widow, seven children, and grand children the issue of a deceased daughter named Fuller. All of these persons were parties to the suit. Pending the partition suit, H. C. Barnes, at different dates in the year 1836, purchased the title and interest of the widow and five of the children of E. Church, all of whom executed conveyances to him. In June, 1837, a decree of sale was entered; and in November following, the farm was sold by a master of the court, and Barnes became the purchaser for $4800. An order confirming the sale was entered in December, 1837. Under the decree and an order modifying it, J. G.

Palen Esq. a master of the court, reported June 2d, 1841, that by reason of advancements made to them by the intestate, in his life time, Vernile and Nathaniel Church, (two of the children and heirs,) had no right or interest whatever in the farm, or in the proceeds of the sale; and that such proceeds, deducting the dower of E. Church's widow, were $3992 84, of which H. C. Barnes was entitled to $3312 14; and the five children of Mrs. Fuller, to the residue, it being $136 14, for each, with interest from the sale. This report was regularly confirmed.

Barnes had taken possession of the farm at the time of his purchase in 1836, and died in possession in September, 1842, leaving the petitioner his widow, and five children. He had never completed his purchase at the master's sale, nor received a master's deed. There were numerous judgments against him, and he died insolvent. Under an order of the court made in this suit, the farm was again sold in August, 1844, and brought $6000. The sale was confirmed, and a deed executed to the purchaser by the master.

Mrs. Barnes then presented her petition, by which she claimed her dower in seven eighths of the fund in court, being the proceeds of the sale. Some of the creditors of H. C. Barnes opposed her claim, insisting that she was not entitled to dower; whereupon a reference was directed, to take proof of the facts, to ascertain the specific and general liens upon the farm as against H. C. Barnes, and the rights of all parties to the fund arising from the sale. The Vice-Chancellor reported, December 10, 1845, that the net proceeds of the sale were $5883 65. That Mrs. Barnes was entitled to her equitable dower in seven eighths of that sum, and that the present value of her dower interest, was $1078 33. And that sundry judgment creditors, (specifying their names, and the sums due to each, and their priority,) had equitable liens on the residue of such seven eighth parts of the fund. The residue of the fund, one eighth, it was conceded, belonged to the five children of Mrs. Fuller. To this report, some of the creditors, whose liens were abridged or cut off by the allowance of dower to Mrs. Barnes, took sundry exceptions, which now came on to be heard.

*H. Hogeboom*, for the creditors.

*K. Miller*, for Mrs. Barnes.

THE ASSISTANT VICE-CHANCELLOR.—According to my view of this case, Henry C. Barnes, at the time of his death, was equitably seised in fee of the whole Church farm, subject to the payment of that portion of the purchase money which belonged to the heirs of Mrs. Fuller. His contract for the purchase, was made with the court of chancery, through the master's sale, and he had paid the whole consideration, (including the costs of the sale and of the partition suit,) with the exception of the share of Mrs. Fuller's children. On his paying the latter, the master would have given him a deed, as a matter of course. No one of the parties in the above entitled suit, save the Fuller's, had any interest whatever in the farm. This was settled by the report of master Palen, and it is not open to be questioned. And in regard to the dower right of Eunice Church, it was merged in and formed a part of Barnes' freehold, as much as did the share which he bought of J. G. Church. The question as to the advancements, had been settled by the report of Mr. Palen, and the parties had acquiesced.

Upon the death of Henry C. Barnes, the expedient of having the farm re-sold, under the original decree in partition, was resorted to. I have not been furnished with a copy of the order for the re-sale, but I presume from the report now before me, that Barnes died insolvent, and this was deemed the cheapest and most expeditious mode of settling his estate.

I cannot conceive of any provision in the order of re-sale, which would divest any equitable right that Barnes had acquired to the farm, by force of the former sale. It could not have been framed or intended, to open the questions which had been settled by the report of Mr. Palen, the master. At all events, I have no evidence from the order itself or otherwise, that such was its scope or operation.

Mrs. Barnes at the death of her husband, was entitled to dower in the whole farm, subject however to a just contribution upon

her part, to the payment of the unpaid purchase money going to the heirs of Mrs. Fuller. (2 R. S. 112, § 71, 72; *Hawley* v. *James*, 5 Paige, 453, per the chancellor.)

On the sale being made under the order of the court, Mrs. Barnes became entitled to her dower in the proceeds, after paying such unpaid purchase money.

The Vice-Chancellor has however proceeded on the principle of setting apart one eighth of the net proceeds of the re-sale, for the share of the heirs of Fuller; and I must assume that the order directing the second sale made this provision, or one tantamount in its effect. The result is that Mrs. Barnes became entitled to dower in seven eighths of the net proceeds, free from any deduction for the payment to the Fuller's. She was unquestionably entitled, with the sanction of the court, to take a gross sum in lieu of her dower interest. And the Vice-Chancellor's report is therefore correct.

Unless the order for a re-sale, opened the report of master Palen, the same result substantially, would be obtained by going back of Barnes's purchase under the decree in partition. By the five conveyances to him from the heirs of Church, with that from the widow, he acquired a legal estate in fee, to the extent of the actual interests of his grantees in the farm. It was not merely five eighths, but it was their entire interest, which by reason of the advancements to the two sons exceeding their proportion, was in fact, as ascertained by Mr. Palen's report, the whole farm, excepting the Fuller share. It is true, this might have remained fluctuating until the value of the farm, and the extent of the advancements were ascertained judicially; but when so adjusted, the conveyances were thereby proved to have been operative, to the extent I have stated.

The pendency of the partition suit, did not affect Barnes' seisin by these deeds. It might end in an actual partition without disturbing his seisin at all; or it might result in a sale which would convert his land into money. But until so converted, it was land, subject to the lien of judgments and mortgages against him, and subject also to his wife's inchoate right of dower. A purchaser under the decree would take a good title, clear of all such

liens and dower right, but they would become impressed upon the proceeds of the sale, and on being brought to the notice of the court, would be protected as against Barnes himself or his voluntary assignees. (See *Westervelt* v. *Haff*, before Assistant Vice-Chancellor, August 20, 1844, not yet reported,) in which this point was held as to a mortgage, executed pending a suit in partition, which terminated in a decree for a sale.(*a*)

As to the costs of the proceedings, the case of *Hawley* v. *Bradford*, (9 Paige, 200,) is an authority for exonerating Mrs. Barnes from defraying any portion of them. Those costs must be borne by the residue of the fund.

The exceptions to the Vice-Chancellor's report are therefore overruled, with costs to be paid by the exceptant; and an order must be entered for the payment of the fund according to the report, first paying out of the same, the costs of the reference before the Vice-Chancellor.

(*a*) Since reported, 2 Sand. Ch. R. 98.